IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Aleksander Nikitchuk,

    Plaintiff,                       No. CIV S- 04-0194 CMK

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.                   <u>ORDER</u>

_____/

        Plaintiff, Aleksander Nikitchuk, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying his application for disability insurance benefits (hereinafter DIB) under the provisions of Title II of the Social Security Act. The parties have filed cross motions for summary judgment. Both parties have consented to magistrate jurisdiction, and the motions are before the undersigned for decision. For the reasons reflected below, plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

///

///

///

## I. BACKGROUND

Plaintiff filed an application for DIB on July 11, 2002, alleging that he became unable to work after fracturing his heel in February 1998. (Tr. 40-45.) Plaintiff also alleged an inability to work due to varicose veins, lower back pain, spinal mis-alignment and headaches. (Tr. 48.) A hearing was held before an administrative law judge (hereinafter ALJ) on June 6, 2003. (Tr. 203.) Plaintiff was accompanied by a representative who was not an attorney[1] and assisted by an interpreter. (Tr. 205.)

At the hearing, plaintiff testified that he was fifty-three years old and had completed high school in the Ukraine. (Tr. 207, 208). He stated that he immigrated to the United States in May 2002 and does not speak English. (Tr. 209.) He last worked as a laborer and meat loader in the Ukraine. He stopped working in 1998 after breaking his heel. (Tr. 208.)

Plaintiff testified that he sees a physician one to two times a month. (Tr. 213-14.) He stated that his foot bothers him very much and that he takes painkillers, sometimes "ten or twelve tablets a day" to manage his pain. (Tr. 216.) On a scale of one to ten, plaintiff rated his pain a five or six. (Id.) With medication, his pain lessens somewhat, to a four. (Id.) Along with medication, plaintiff has tried massage on his leg and shoulder. (Id.) Plaintiff stated that he has had surgery for a varicose vein on his right leg, but not for the varicose vein on his left leg. (Id.) He testified that the surgery did not help as his leg is still numb and he has to massage it every morning. (Tr. 216-17.) He uses a cane, which was prescribed to him. (Tr. 217.) Plaintiff testified that he has pain in his lower back due to a disc "out of place." (Tr. 218.) He has a belt which was prescribed to him for the back pain. (Id.) Plaintiff testified that the back pain prevents him from bending. (Id.) Plaintiff testified that he also has problems with his left shoulder, which he twisted. (Id.) He stated that the most weight he can lift with his left hand is ten pounds. (Tr. 219.)

---

[1] In his decision the ALJ refers to plaintiff's representative as a "nonattorney," however, during the hearing, she is identified as an attorney. (Tr. 13, 205.)

1  Plaintiff testified that he lives with his son and daughter-in-law and does almost
2  no typical household chores. (Tr. 209-211.)  Plaintiff sometimes vacuums and occasionally
3  makes tea or coffee. (Tr. 210.)  He goes to church twice a week for services lasting two hours.
4  (Tr. 211.)  Plaintiff stated that he does no volunteer work for the church and does not participate
5  in church activities.  He stated that he does not belong to any organizations or clubs, play sports
6  or have any hobbies. (Tr. 211-212.)  Plaintiff has a driver's license and drives his daughter-in-
7  law to the grocery store about once a week and drives himself to church. (Tr. 212.)  Plaintiff
8  stated that he generally does not participate in grocery shopping, and waits outside in the car for
9  his daughter-in-law. (Id.)  The times that plaintiff does go into the store, he spends ten to fifteen
10 minutes in the store. (Id.)  For fun, plaintiff reads to his grandchildren. (Tr. 213.)

11  The ALJ left the record open for plaintiff's counsel to obtain additional medical
12 records and an new assessment from his new treating physcian. (Tr. 220-21.)

13  The medical records in this case reveal the following.  Plaintiff visited Harbor
14 Medical Clinic for an annual exam on May 23, 2002. (Tr. 148.)  The exam record notes that
15 plaintiff complained of left heel pain from a broken heel in 1976. (Id.)  The examination
16 revealed that plaintiff had varicose veins in his legs, mostly above the knees. (Tr. 149.)  Clinical
17 examination of the back revealed no deformities, no pain and a full range of motion.[2] (Id.)
18 Plaintiff's physician noted left heel pain and swelling, recommended a podiatry consult and gave
19 him compressive hosiery for the varicose veins. (Tr. 149, 146.)  Plaintiff was directed to return
20 in one month for a follow-up on his varicose veins. (Tr. 149.)  At the follow-up on June 18,
21 2002, plaintiff reported that his varicose veins were better with the compression stockings. (Tr.
22 147.)

23 ///

---

25  [2]The medical abbreviation "⊖" mean "negative" or "without."  Dictionary of Medical
   Acronyms and Abbreviations, 4th Ed. (2001).  The abbreviation "FROM" means "full range of
26 movement."  Id.

On August 14, 2002, plaintiff visited Harbor Medical Clinic, complaining of left shoulder pain beginning one week prior. (Tr. 143.) Clinical examination revealed decreased range of motion, and the physician diagnosed rotator cuff syndrome. (Tr. 143.) Plaintiff refused sigmoid injections, was directed to take 600 mg of ibuprofen and follow-up in three months. (Tr. 143.) Plaintiff also began physical therapy for his shoulder, which consisted of an evaluation and eight visits. (Tr. 106-07, 111, 130, 135-42.) On October 23, 2002, plaintiff's physical therapy ended after he reported that his pain was now intermittent, showed fifty-percent improvement, and stated that he was feeling better and did not want to continue the therapy. (Tr. 107, 111.)

On September 18, 2002, plaintiff was examined by consultive examiner, James L. Martin, M.D. (Tr. 88-91.) During his exam, plaintiff used the services of an interpreter, who Dr. Martin noted was "good quality." (Tr. 88.) Plaintiff's chief complaints were foot pain, varicose veins and arm pain. (Id.) Plaintiff told Dr. Martin that he had fractured his left heel in 1997, leaving him with chronic pain for which he took painkillers. (Id.) Plaintiff related that he had varicose veins in both legs since the 1980's and had used support hose, which helped. (Id.) Plaintiff related that his legs ached and swelled, particularly on warm days. (Id.) Dr. Martin noted that plaintiff stated that he had recently begun to have pain in his shoulder and arm for which he had not been medically evaluated. (Id.)

Dr. Martin observed that plaintiff had no difficulty getting on and off the examining table or moving about the office and that he used no assistive device. (Tr. 89.) Plaintiff "was able to squat and arise from the squatting position without obvious difficulty." (Id.) Seated and supine sciatic tension testing was negative bilaterally. (Id.) Dr. Martin noted that plaintiff had a full range of motion in both the cervical and dorsolumbar spine. (Id.) On the musculoskeletal examination, Dr. Martin observed that "cooperation was questionable with much grimacing and pain vocalization not noted casually." (Id.) Dr. Martin noted that plaintiff's gait was normal with appropriate tandem arm-swing, but that plaintiff reported discomfort when walking on his heels and toes. (Tr. 90.) It was noted that plaintiff had multiple, large

4

varicosities in both legs with some edema and statis change. (Id.) The vascular exam revealed that all of plaintiff's pulses were normal. (Id.) Strength testing revealed no focal deficits in either the upper or lower extremities, normal deep tendon reflexes bilaterally in biceps, patellar and ankle and intact light-touch sensation in both the upper and lower extremities. (Id.) Dr. Martin noted that plaintiff had dropped heart beats of unknown significance. (Id.)

Based on his examination, Dr. Martin opined that plaintiff could lift up to fifty pounds and frequently lift or carry up to twenty-five pounds; frequently stoop and crouch; stand and walk, off and on, for at least six hours in an eight hour workday; sit for six hours in an eight hour work day and could benefit from the opportunity to elevate his legs often. Dr. Martin noted that plaintiff had good use of the hands and fingers for repetitive hand and finger actions. (Tr. 91.) Dr. Martin stated that due to plaintiff's use of narcotic analgesics, plaintiff might be restricted from driving or operating heavy machinery.

Dr. Martin's report was reviewed by a State Agency physician, Patrick Bianchi, M.D., on September 26, 2002. (Tr. 94-101.) Dr. Bianchi concurred with Dr. Martin's conclusions and also noted that plaintiff had limited push/pull due to shoulder pain and would benefit from frequently elevating his legs. (Tr. 95 & 98.) Based on the conclusions of Drs. Bianchi and Martin, a vocational analyst assessed plaintiff as capable of work at the medium exertional level. (Tr. 75-76.) In making this assessment, the vocational analyst noted that plaintiff was limited in his push/pull and that he would benefit from elevation of his legs. (Tr. 75.)

Plaintiff visited Harbor Medical Clinic on September 23, 2002 complaining of an irregular heartbeat. (Tr. 133.) He was diagnosed with heart palpitations that would be further monitored by use of a holter and lower back pain. (Id.) It was noted that plaintiff had heel tenderness and was considering surgery for his varicose veins. (Id.) Subsequent holter testing revealed a "grossly normal holter" with occasional premature atrial and ventricular contractions. (Tr. 122.) On November 8, 2002, plaintiff had a "normal EKG." (Tr. 105.)

1  On October 3, 2002, plaintiff returned to Harbor Medical Clinic complaining of back pain. (Tr. 119.) An x-ray taken that day revealed degenerative disc disease at L5-S1. (Tr. 121.) Plaintiff was referred for physical therapy for his lower back pain and questionable left sided sciatica (Tr. 118.) On both October 3 and November 15, 2003, plaintiff's physical therapy rehabilitation potential was assessed as "good." (Tr. 103, 118.) Plaintiff received physical therapy for his back pain between December 13, 2002 and February 23, 2003, when the maximum benefit was obtained. (Tr. 166-68, 170, 172.) A neurological evaluation on October 15, 2002 revealed lumbar radiculopathy on the left, muscle cramps secondary to the varicose veins and hypoglycemia. (Tr. 112-16.) Plaintiff was directed to follow-up on these conditions in two months. (Tr. 116.)

On November 19, 2002, plaintiff received surgical treatment for his right leg varicose veins. (Tr. 176-93.) Plaintiff was discharged from the hospital on November 20, 2002 with pain medication and instructions to elevate his leg for three days. (Tr. 176.)

On December 12, 2002, plaintiff was seen at the Harbor Medical Clinic for lower back pain. (Tr. 173.) Plaintiff was diagnosed with degenerative joint disease at L5-S1 based on his October 3, 2002 x-ray. (Id.) He was again referred to physical therapy with a prognosis assessment of "good." (Tr. 175.)

On December 28, 2002, plaintiff saw a podiatrist, Alex Reyzelman, D.P.M, who opined that during an eight hour work week, plaintiff could walk and stand for less than one hour, sit for one to two hours, and occasionally lift five to ten pounds. (Tr. 161-64.) Dr. Reyzelman's assessment was based on a diagnosis of "post traumatic degenerative joint disease left foot" and "arthritis of subtalar joint" secondary to fracture. (Tr. 161.) Dr. Reyzelman opined that plaintiff's pain from these conditions was "moderate which increases to severe during weight bearing on left foot." (Tr. 162.)

On April 28, 2003, plaintiff was seen at the Sacramento Primary Care Clinic (Tr. 201.) Plaintiff claimed inability to work due to a left foot fracture in 1997. (Id.) His treating

6

physician observed that plaintiff "walks with a cane, but gait is normal, in fact he puts less weight on right foot while ambulating." (Id.)  Examination also revealed no synovitis and no pain with dorsiflexion, but some ligamentous pain was noted. (Id.)  Plaintiff was referred for an x-ray, which revealed sclerosis and deformity most likely due to trauma. (Tr. 202.)

On May 9, 2003, plaintiff was again seen at the Sacramento Primary Care Clinic with a chief complaint of lower back pain, which was worsening and prevented him from sitting for long periods. (Tr. 198.)  Examination of plaintiff's range of motion in his back revealed flexion of seventy degrees, full extension and negative straight leg raise. (Id.)  Plaintiff was diagnosed with lower back pain with left side sciatica symptoms and advised to continue his prescribed oral medication of Celebrex and Tylenol. (Id.)  Plaintiff was seen at the Sacramento Primary Care Clinic on May 15, 2003[3] and instructed to continue oral pain medication for his ankle. (Tr. 196.)  Examination also revealed that plaintiff's lumbar back condition was associated with slight leg pain when sitting, but without associated groin, bowel or bladder problems. (Id.)  Plaintiff had full range of motion of his ankle at a June 5, 2003 follow-up examination, and he was advised to continue oral pain medication. (Tr. 195.)  Plaintiff declined a steroid injection into his ankle joint. (Id.)

In a written decision dated August 29, 2003, the ALJ found that plaintiff had the severe impairments of varicose veins, back pain and left foot pain.  However, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment. (Tr. 16.)  The ALJ found that plaintiff was able to perform a full range of medium work. (Id.)  The decision of the ALJ became final when the Appeals Council denied plaintiff's request for a review. 4-7.)  Plaintiff filed a timely appeal in this court on January 29, 2004.

///

---

[3]Medical records show that plaintiff was also seen at the Harbor Medical Clinic on May 15, 2003, where he was diagnosed with lower back pain and gastroesophogeal reflux disease. (Tr. 165.)

## II.  STANDARD OF REVIEW

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff contends that the ALJ's decision was not supported by substantial evidence.  As described above, a decision is supported by substantial evidence when it is supported by evidence, which when considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Thomas v. Barnhardt, 278 F.3d 947, 956 (9th Cir. 2002.)

In his evaluation of the evidence, the ALJ discussed medical evidnce relevant to plaintiff's varicose veins, back pain and left heel pain. (Tr. 14.)  He noted that although the

plaintiff had severe varicose veins, this condition had been controlled with use of compression stockings, medications and surgery on plaintiff's right leg varicose veins. (Id.) The ALJ further noted that plaintiff's back pain and heel pain have not resulted in any limitations in his range of movement or ability to perform a job. (Id.) All of these findings are supported in the record. Thomas, 278 F.3d at 956. In his discussion, the ALJ referenced both the testimony from the hearing and the relevant medical records. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1991) (stating that an ALJ's decision is sufficient when it adequately states the basis on which the factual conclusions are made). Accordingly, the undersigned finds that the ALJ's conclusions that plaintiff's severe impairments do not equal a disability and that plaintiff could perform medium exertions is supported by the record.

Plaintiff asserts that the ALJ improperly rejected the treating podiatrist's opinion of disability. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Substantial evidence supports the ALJ's rejection of Dr. Reyzelman's assessment. The record shows that Dr. Reyzelman's opinion that plaintiff was substantially limited in his ability to sit, stand, walk and lift directly contradicted consultative physician Dr. Martin's opinion that plaintiff was minimally limited his ability to perform these functions. Dr.

9

Reyzelman's assessment was also contradicted by the April 2003 observation of plaintiff's treating physician that plaintiff's gait was normal, despite the use of a cane. (Tr. 201.) It was "solely the province of the ALJ to resolve the conflict" between these two opinions. Andrews, 53 F.3d at 1041. Further, the ALJ noted that Dr. Reyzelman's assessment was not supported by the medical records. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)(stating that an ALJ properly rejects a treating physician's opinion that lacks substantive medical findings to support her conclusion.) Although plaintiff asserts that Dr. Reyzelman's conclusions were based on an x-ray, the record shows that Dr. Reyzelman did not indicate that he based his assessment on an x-ray, and no x-rays of plaintiff's ankle were taken until five months later in May 2003. (Tr. 161-64, 205.) Accordingly, the undersigned finds that the ALJ properly resolved the conflicting medical opinions and that his decision is supported by substantial evidence in the record.

Plaintiff challenges the ALJ's determination that he lacked credibility. Credibility determinations are the province of the ALJ. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

        The ALJ's credibility determination is supported by the record. In making his determination, the ALJ considered that plaintiff's varicose veins had required only occasional medical care over the years and no medical care at the time of the hearing.  (Tr. 14.)  The ALJ considered the notations in plaintiff's medical records that he experienced improvement for this condition when wearing compression stockings and that the objective medical records did not show any significantly abnormal findings.  The ALJ noted that plaintiff's complaints regarding his varicose veins were not in proportion to the medical records.  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).   The ALJ took into account the remarks of the consultative examiner which questioned plaintiff's credibility in light of the considerable grimacing and pain vocalization during the exam, and the ALJ noted that the objective medical findings did not support plaintiff's statements concerning his back and heel pain.  Id.   Finally, the ALJ noted that plaintiff testified that his pain medications partially helped his pain. The factors considered by the ALJ were all valid and supported by the record.  The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

        Finally, plaintiff contends that the ALJ erred in determining that plaintiff could perform the full range of medium work.  Plaintiff also argues that the ALJ impermissibly relied on the Medical-Vocational Guidelines (hereinafter Grids) instead of a vocational expert in

determining plaintiff's residual functional capacity (hereinafter RFC).   The grids are in table form, and the tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  In other words, an ALJ may rely on the grids when a claimant has only exertional limitations or even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[4]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

In determining plaintiff's RFC, the ALJ relied on the opinion of Dr. Martin, the consultative physician and the opinion of the state agency physician.  Both of these opinions

---

[4] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e).

noted that plaintiff had some shoulder limitations and that plaintiff would "likely benefit" from frequent elevation of his legs. (Tr. 91, 98.) Neither physician included any work-related limitation stemming from the elevation of plaintiff's legs. Dr. Martin included no limitation on plaintiff's push/pull, while Dr. Bianchi noted a push/pull limitation due to plaintiff's shoulder pain. (Tr. 91, 95.) The ALJ properly relied on these two physicians's assessment of plaintiff's exertional capabilities in using the grids to determine plaintiff's disability. As plaintiff has not shown any evidence of a nonexertional impairment, he cannot show that the ALJ impermissibly relied on the grids in making his disability determination. Finally, the record shows that a vocational analyst reviewed the RFC assessments of Drs. Martin and Bianchi. (Tr. 75, 88-101.) The analyst expressly considered the limitation that Dr. Bianchi noted on plaintiff's pull/push due to shoulder pain and the recommendation that plaintiff would benefit from leg elevation. (Tr. 75.) Even with these limitations, the analyst determined that plaintiff could perform jobs at the medium exertional level, such as laundry worker or kitchen helper. (Tr. 76.) The undersigned finds that substantial evidence in the record supports the ALJ's determination that plaintiff could perform work at the medium exertional level.

## IV. CONCLUSION

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross motion for summary judgment is granted.

DATED: May 26, 2005

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE